UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 21-14005-CIV-CANNON/MCCABE

TAMARIUS ALEXANDER,

    Petitioner,

v.

MARK S. INCH,
Secretary, Florida Department of Corrections,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon Tamarius Alexander's Petition for Habeas Corpus under 28 U.S.C. § 2254 ("Petition") (DE 1), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 19). Mark Inch, Secretary, Florida Department of Corrections ("Respondent"), filed a Response to the Petition (DE 6), to which Petitioner filed a Reply (DE 18). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that the Petition be **DENIED.**

**I.    OVERVIEW**

Petitioner brings this action pursuant to 28 U.S.C. § 2254, which provides relief to persons held in custody pursuant to state court decisions that are (1) "contrary to … clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d). Petitioner alleges three constitutional errors:

> (1) Florida courts failed to find that Petitioner received ineffective assistance of counsel in violation of his Sixth Amendment rights, where his trial counsel failed to advise him that he faced exposure to a thirty-year sentence under Florida's habitual felony offender ("HFO") law, section 775.084, Florida Statutes;
>
> (2) Florida courts failed to find violations of Petitioner's Fifth and Fourteenth Amendment due process rights, where Petitioner was never notified of his exposure to a thirty-year sentence under Florida's HFO law; and
>
> (3) Florida courts failed to find violations of Petitioner's Eighth Amendment right to be free of cruel and unusual punishment, where he received a thirty-year sentence after being convicted for possession of a firearm by a convicted felon.

As set forth below, the Court recommends denial of this Petition because Petitioner failed to fully exhaust these claims, and because the claims fail on the merits.

## II. BACKGROUND

### A. Trial Proceedings

On July 2, 2010, the State Attorney for the Nineteenth Judicial Circuit, in and for St. Lucie County, Florida, charged Petitioner, by way of information, with possession of a firearm by a convicted felon, a second-degree felony, in violation of section 790.23, Florida Statutes (DE 7-1 at 2).[1] The State also charged Petitioner with numerous other offenses, spread across multiple case numbers.[2]

---

[1] The appendix, found at DE 7-1, will be cited to the electronic page number. The trial and sentencing hearing transcripts, found at DE 8-1, will be cited to the transcript page number. The postconviction record, found at DE 8-2, will be cited to the record number.

[2] In case number 2010-CF-002254-A, Petitioner was charged with possession of a firearm by a convicted felon (DE 7-1 at 2). In case number 2010-CF-2307-A, Petitioner was charged with dealing in stolen property and giving false information (DE 7-1 at 129). In case number 2010-CF-2248-C, Petitioner was charged with burglary of a dwelling and third-degree grand theft (DE 7-1 at 132). In case number 2010-CF-002704-A, Petitioner was charged with burglary of a dwelling while armed, grand theft of a firearm, and third-degree grand theft (DE 7-1 at 134). In case number 2010-CF-2718-B, Petitioner was charged with burglary of a dwelling while armed, grand theft of a firearm, and third-degree grand theft (DE 7-1 at 137).

2

At least two separate lawyers represented Petitioner during the trial phase, including Edward Mosher (hereafter "First Lawyer") and Reginal Sessions (hereafter "Second Lawyer"). During the period of First Lawyer's representation, the State offered a global plea deal to resolve all cases, under which Petitioner would serve fifteen years in prison (DE 8-2 at 295). Petitioner alleges that, in the course of conveying this global plea offer, First Lawyer never advised Petitioner that, in the event Petitioner rejected the plea offer and proceeded to trial, he faced HFO sentencing exposure on the felon-in-possession charge, which could result in a thirty-year sentence (DE 1 at 4, 7). Petitioner rejected the global plea offer (DE 7-1 at 140, 142).

Thereafter, for reasons unknown, Second Lawyer took over the representation (DE 8-2 at 296). During the period of Second Lawyer's representation, the State re-offered the same global plea deal to resolve all cases, calling for Petitioner to serve fifteen years in prison (DE 8-2 at 296; DE 7-1 at 73). Petitioner alleges that, in the course of re-conveying this global plea offer, Second Lawyer likewise failed to advise Petitioner that, in the event he rejected the plea offer and proceeded to trial, he faced HFO sentencing exposure on the felon-in-possession charge, which could result in a thirty-year sentence (DE 1 at 7, 16-17).

Petitioner elected to reject the second global plea offer and proceed to trial (DE 8-1 at 297). Thereafter, on July 30, 2013, after a two-day trial, the jury found Petitioner guilty of possession of a firearm by a convicted felon (DE 7-1 at 4, DE 8-1 at 207). The next day, on July 31, 2013, the State filed a written notice, pursuant to section 775.084, Florida Statutes, announcing its intent to seek enhanced HFO sentencing penalties (DE 7-1 at 6, DE 8-1 at 208).

3

On October 3, 2013, the trial court conducted a sentencing hearing, during which it found that Petitioner met the requirements for HFO sentencing (DE 8-1 at 226).  As a result, Petitioner faced a maximum sentence of thirty years' imprisonment (DE 8-1 at 224).  The trial court sentenced Petitioner to the maximum sentence, thirty years' imprisonment, with credit for time served of 1,182 days (DE 7-1 at 8-12; DE 8-1 at 226).

### B.     Direct Appeal

Petitioner timely filed a direct appeal to Florida's Fourth District Court of Appeal ("Fourth DCA") challenging his conviction (DE 7-1 at 18-40).  Petitioner argued the trial court erred in denying his motion for judgment of acquittal based on the State's failure to prove actual or constructive possession of the firearm (DE 7-1 at 29).  Petitioner did not challenge his HFO designation or his thirty-year sentence.

On June 11, 2015, the Fourth DCA affirmed Petitioner's conviction without written opinion.  *See Alexander v. State*, 169 So. 3d 1187 (Fla. 4th DCA 2015).  The conviction and sentence became final ninety days after the mandate.[3]

### C.     Postconviction Proceedings Before the Trial Court

On July 11, 2016, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (DE 7-1 at 67-80).  Petitioner alleged, among other grounds, that First Lawyer and Second Lawyer both rendered ineffective assistance of counsel by failing to advise Petitioner of his exposure to HFO sentencing under Florida law (DE 7-1 at 72).  On October 8, 2019, the postconviction court held an evidentiary hearing and considered testimony of

---

[3] Petitioner alleges that his conviction and sentence became final on September 11, 2015 (DE 1 at 10).  Respondent does not challenge this date (DE 6 at 8).

4

both Petitioner and Second Lawyer (DE 8-2 at 287-323).

Petitioner testified that First Lawyer represented him in the case for almost two years (DE 8-2 at 294). During this representation, Petitioner testified that First Lawyer conveyed the global plea offer from the State, under which Petitioner would be required to serve "fifteen mandatory" (DE 8-2 at 295). First Lawyer never informed Petitioner, however, that if Petitioner chose to reject the plea offer, he faced HFO sentencing exposure with a possible thirty-year sentence on the felon-in-possession charge (DE 8-2 at 294).

Petitioner testified that Second Lawyer took over the case after First Lawyer (DE 8-2 at 296). During Second Lawyer's period of representation, Petitioner testified that Second Lawyer relayed the same "fifteen year global plea deal" from the State (DE 8-2 at 269). According to Petitioner, Second Lawyer likewise never informed Petitioner that, if Petitioner chose to reject the plea offer, he faced HFO sentencing exposure with a possible thirty-year sentence on the felon-in-possession charge (DE 8-2 at 296). Petitioner testified that, had he known he was facing HFO sentencing exposure of up to thirty years, he would have accepted the global plea offer of fifteen years (DE 8-2 at 298).

Second Lawyer also testified at the hearing (DE 8-1 at 303-18). Second Lawyer confirmed that the State offered Petitioner a global plea deal of fifteen years to resolve all pending charges (DE 8-2 at 304-05). Second Lawyer testified that, during plea negotiations, the State consistently reminded him that Petitioner faced HFO exposure (DE 8-2 at 305, 310-11). As a result, when Second Lawyer discussed the State's plea offer with Petitioner, Second Lawyer explained the HFO provisions of Florida law and the possibility that Petitioner might face thirty years' imprisonment if convicted on the gun charge (DE 8-2 at 306-07).

5

> On cross examination, the following exchanges occurred:
>
> [POSTCONVICTION COUNSEL]: Do you recall what specifically you told [Petitioner] about the habitual offender exposure in this case?
>
> [SECOND LAWYER]: He was subject to thirty years. And in front of this judge there's a likelihood it could happen.
>
> [POSTCONVICTION COUNSEL]: Did you tell him that? Do you recall you told him that as regards to the global plea offer or as regards [to] the possession of a firearm by a convicted felon charge?
>
> [SECOND LAWYER]: I told him with regards to the charge itself regarding the habitual sentence firearm by convicted felon, because that was the charge that we were concerned with, if my memory serves me correctly, that was the one….
>
> …
>
> [POSTCONVICTION COUNSEL]: Are you certain?
>
> [SECOND LAWYER]: I'm certain that I … made him aware of the habitual offender offense subject to thirty years and if I'm not mistaken it didn't make sense for me not to tell him that it related to that particular charge because that was the offense that was so I wouldn't have brought it up otherwise unless it related to that particular offense, because that was the –
>
> [POSTCONVICTION COUNSEL]: I understand that … it didn't make sense, but my question to you is testifying here today can you say with one hundred percent certainty that you looked at [Petitioner] and you told him as regards this charge, not the global plea offer, but the possession of a firearm by a convicted felon, you are facing thirty years?
>
> [SECOND LAWYER]: Absolutely. And … I'm going to tell you again why. I had a state attorney that really didn't want to go to trial. And he held that over our head. And he would constantly remind me and I constantly brought it up with [Petitioner] so yes, ma'am, we were ready to go to trial.

(DE 8-2 at 314-15).

Neither side chose to call First Lawyer to testify as a witness (DE 8-2 at 318-19). At the conclusion of the hearing, the postconviction court orally announced that, as between Petitioner and Second Lawyer, the court found Second Lawyer to be the "more credible witness" (DE 8-2 at 322). The postconviction court therefore concluded that, contrary to Petitioner's allegations,

6

Second Lawyer had fully advised Petitioner of the HFO sentencing risk before Petitioner chose to reject the State's plea offer and proceed to trial (DE 8-2 at 322). The postconviction court thereafter entered a written order denying the Rule 3.850 motion (DE 7-1 at 222).

### D. Postconviction Proceedings on Appeal

On March 19, 2020, Petitioner filed a timely appeal to the Fourth DCA (DE 7-1 at 226-45). Petitioner challenged the trial court's denial of his ineffective assistance claim as to First Lawyer, but not as to Second Lawyer (DE 7-1 at 239). Since neither side had called First Lawyer to testify as a witness, Petitioner argued that his own testimony regarding First Lawyer's failure to advise him of the HFO sentencing risk stood unrebutted (DE 7-1 at 238). Petitioner further argued that, under *Alcorn v. State*, 121 So. 3d 419, 422 (Fla. 2013), ineffective assistance had to be determined "at the time of the [plea] offer," and thus First Lawyer's errors could not be cured by Second Lawyer's subsequent disclosure of the HFO sentencing risk (DE 7-1 at 238-39).

On September 16, 2020, the Fourth DCA affirmed the trial court's decision. *See Alexander v. State*, 303 So. 3d 221 (Fla. 4th DCA 2020). The Fourth DCA reasoned that, "[b]ecause the second attorney properly advised appellant as to the [HFO] sentencing consequences that he faced upon conviction, when evaluating the *same* offer that was made to him through his prior attorney, appellant cannot claim ineffective assistance for his prior counsel's failure to advise of his [HFO] status." *Id.* at 223 (emphasis in original). The Fourth DCA issued its mandate on November 6, 2020 (DE 7-1 at 290).

7

This timely Petition followed.[4]

### III. ANALYSIS

Petitioner brings this action pursuant to 28 U.S.C. § 2254, which provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The statute further provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2).

Here, Petitioner alleges three claims for relief, stemming from violations of, respectively, the Sixth Amendment right to assistance of counsel, the Fifth and Fourteenth Amendment rights to due process of law, and the Eighth Amendment right to be free from cruel and unusual punishment. As set forth below, however, the Court recommends denial of this Petition because Petitioner failed to fully exhaust these claims before the state courts, and because the claims fail on the merits.

---

[4] The State concedes, and the Court finds, that the Petition is timely (DE 6 at 8).

### A. Petitioner Did Not Exhaust His State Court Remedies

A habeas petitioner must exhaust state court remedies before filing a federal habeas petition. To satisfy this requirement, a habeas petitioner must "fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corrs.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (cleaned up). While a petitioner need not "cite book and verse on the federal constitution," *Duncan v. Henry*, 513 U.S. 364, 365 (1995), he must "alert[ ] the [state] court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). He accomplishes this only when a "reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley v. Sec'y Dep't of Corrs.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004). Once a petitioner has "fairly presented" his federal claim to the state trial and appellate courts, he must then "present that exact same claim to the federal courts – adjacent claims or nominally similar claims do not make the cut." *Green v. Sec'y, Dep't of Corrs.*, 28 F.4th 1089, 1158 (11th Cir. 2022) (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

The Court will address the exhaustion of each of Petitioner's claims in turn.

#### 1. Claim 1

As to the first claim, Petitioner alleges that Second Lawyer rendered ineffective assistance of counsel in violation of his Sixth Amendment rights (DE 1 at 16). In his Rule 3.850 motion before the trial court, Petitioner argued that First Lawyer and Second Lawyer *both* rendered ineffective assistance of counsel (DE 7-1 at 72-73). When Petitioner appealed to the Fourth DCA, however, he chose to appeal only as to First Lawyer, but not as to Second Lawyer (DE 7-1 at 237-39). Having failed to appeal the trial court's determinations as to Second Lawyer, Petitioner

failed to exhaust this claim. *See Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) ("Consistent with the purpose of the exhaustion rule, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.") (cleaned up). Accordingly, this claim is defaulted to the extent it seeks to prove Second Lawyer's ineffectiveness.

### 2. Claims 2 and 3

Next, as to the second and third claims – alleging violations of the Fifth and Fourteenth Amendment rights to due process and the Eighth Amendment right to be free from cruel and unusual punishment – Petitioner failed to raise these grounds on direct appeal or collateral review. The undersigned has reviewed Petitioner's direct review briefs (DE 7-1 at 18-41) and his Rule 3.850 motion and appellate briefs (DE 7-1 at 67-78, 229-45). Based on this review, Petitioner did not "fairly present" to the state courts the issues raised in claims two and three of this Petition. A "reasonable reader" would not infer that Petitioner was attempting to raise due process or cruel and unusual punishment claims before the state courts. *See Jorge v. Jones*, No. 17-22172-King, 2018 WL 10788538, *18 (S.D. Fla. Oct. 10, 2018) ("Because the state court was not on notice of the Eighth Amendment cruel and unusual punishment claim and the Fourteenth Amendment due process claim, these arguments are unexhausted and defaulted from review here."). As such, these claims are procedurally defaulted.

### 3. *Martinez*

Petitioner's Reply argues this Court should excuse his procedural defaults pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), because Petitioner's postconviction counsel was ineffective in failing to exhaust these claims before the state courts (DE 18 at 4). In *Martinez*, the Supreme

10

Court recognized that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 6.

*Martinez* does not apply here for two reasons.  First, *Martinez* applies only to "substantial" claims of ineffective assistance at trial.  *Id.* at 14.  This means the "prisoner must demonstrate that the claim has some merit."  *Id.*  For the reasons set forth in section III.B.1 below, Petitioner's claim for ineffective assistance of counsel by Second Lawyer lacks merit.  As such, this procedural default cannot be excused under *Martinez*.

Second, *Martinez* applies only to cure the default of habeas claims for ineffective assistance of trial counsel; it does not apply to cure defaults of other constitutional claims.  *See Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel."); *see also Davila v. Davis*, 137 S. Ct. 2058, 2066 (2017) (clarifying that the *Martinez* court was principally concerned about trial errors committed by trial counsel).  Here, Petitioner's second and third claims allege violations of the Fifth, Fourteenth, and Eighth Amendments.  *Martinez* does not apply to those claims.

**B.     The Petition Fails on the Merits**

Next, even assuming Petitioner properly exhausted his federal constitutional claims in the state courts, the Petition nevertheless fails on the merits.  The Court will address each constitutional claim in turn.

### 1. Sixth Amendment Violation

Petitioner alleges that Second Lawyer rendered ineffective assistance of counsel, in violation of the Sixth Amendment, because Second Lawyer failed to advise Petitioner of the risk of HFO sentencing under Florida law. In *Strickland*, the Supreme Court established a two-part test for determining ineffective assistance of counsel. 466 U.S. at 687; *see also Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Holladay*, 209 F.3d at 1248. Second, a petitioner must show that this deficient performance prejudiced the defense. *Id.* To satisfy this test, the defendant must show a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Both prongs of the test must be satisfied. *Id.*

Petitioner cannot meet the *Strickland* test here. The postconviction court conducted an evidentiary hearing on the factual issue of whether Second Lawyer advised Petitioner of the HFO sentencing risk under Florida law, and the trial court heard and considered the testimony of both Petitioner and Second Lawyer on that issue (DE 8-2 at 296-302, 305-18). After hearing the testimony, the trial court found Second Lawyer to be "the more credible witness" and concluded – as a factual matter – that Second Lawyer advised Petitioner of the HFO sentencing risk before Petitioner rejected the State's plea offer and proceeded to trial (DE 8-2 at 322).

Factual determinations such as credibility findings enjoy heightened deference on habeas review. *See Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) ("[A] state court's factual findings are presumed correct, unless rebutted by the petitioner with clear and convincing evidence."); 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court

shall be presumed to be correct."); *Kurtz v. Warden, Calhoun State Prison*, 541 Fed. App'x 927, 929 (11th Cir. 2013) ("The Antiterrorism and Effective Death Penalty Act of 1996 … imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (cleaned up).

To warrant relief here, Petitioner bears the burden to show the state court's factual findings and credibility assessments amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Court has reviewed the record and finds that Petitioner has not satisfied this burden. Likewise, Petitioner has not shown that the Florida state courts reached decisions that were "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* The Petition should be denied on the first claim.

### 2. Due Process Violation

Petitioner next alleges violations of his Fifth and Fourteenth Amendment due process rights based on the State's failure to provide written notice prior to trial that it intended to seek the HFO sentencing enhancement (DE 1 at 18-19). At the outset, the Court notes that Florida law does not require the State to provide such notice prior to trial; instead, the HFO statute requires the State to provide written notice of its intent to seek the HFO sentencing enhancement prior to sentencing. *See* § 775.084(3)(a)2, Fla. Stat. ("Written notice shall be served on the defendant and the defendant's attorney a sufficient time prior to … the imposition of sentence in order to allow the preparation of a submission on behalf of the defendant."). The Florida Supreme Court has previously found these procedural safeguards to be adequate and in accordance with the requirements of due process. *See Eutsey v. State*, 383 So. 2d 219, 224 (Fla. 1980) ("We hold that

13

the procedural safeguards afforded a defendant by section 775.084 are adequate and are in accordance with the due process requisites announced by the Supreme Court.").

More importantly, and regardless of whether the State complied with the Florida statute, the postconviction court found – as a factual matter – that Second Lawyer advised Petitioner of the HFO sentencing risk before trial (DE 8-2 at 322). Second Lawyer testified as follows:

> [POSTCONVICTION COUNSEL]: Are you certain?
>
> [SECOND LAWYER]: I'm certain that I … made him aware of the habitual offender offense subject to thirty years ….
>
> [POSTCONVICTION COUNSEL]: … my question to you is testifying here today can you say with one hundred percent certainty that you looked at [Petitioner] and you told him as regards this charge, not the global plea offer, but the possession of a firearm by a convicted felon, you are facing thirty years?
>
> [SECOND LAWYER]: Absolutely. And … I'm going to tell you again why. I had a state attorney that really didn't want to go to trial. And he held that over our head. And he would constantly remind me and I constantly brought it up with [Petitioner] so yes, ma'am, ….

(DE 8-2 at 315). The state court's credibility findings enjoy heightened deference on habeas review. *See Putman*, 268 F.3d at 1241; 28 U.S.C. § 2254(e)(1); *Kurtz*, 541 Fed. App'x at 929.

The undersigned finds that Petitioner has not satisfied his burden to show the state court's factual findings amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or that the state courts reached decisions that were "contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d). The Petition should be denied on the second claim.

### 3.     Eighth Amendment Violation

Finally, Petitioner alleges that his thirty-year sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment (DE 1 at 20).  In general, "cruel and unusual punishment" refers to the mode and method of punishment, not the length of incarceration.  *See Harmelin v. Michigan*, 501 U.S. 957, 979 (1991) ("[T]he cruel and unusual punishments clause was directed at prohibiting certain methods of punishment.").  The length of a sentence violates the Eighth Amendment only if it is grossly disproportionate to the severity of the crime.  *See Ewing v. California*, 538 U.S. 11, 21 (2003) ("[T]his Court has on occasion stated that the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime.").

In this regard, the Eighth Amendment does not require strict proportionality between crime and sentence.  *See Harmelin*, 501 U.S. at 979.  Rather, it forbids only extreme sentences that are grossly disproportionate to the crime.  *Id.*; *see also United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) ("In non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle.") (cleaned up).  "[P]roportionality as defined by the United States Supreme Court refers to the evaluation of the appropriateness of a sentence for a particular crime."  *Johnson v. Florida*, No. 5:15cv34-WS/CAS, 2017 WL 2115492, *7 (N.D. Fla. April 3, 2017).  In non-capital punishment cases, "successful challenges to the proportionality of particular sentences [are] exceedingly rare."  *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

In this case, the state court sentenced Petitioner to a thirty-year sentence after finding that he qualified for HFO status under Florida law.  The HFO statute provides for increased sentences based upon a finding that a defendant qualifies as a "habitual felony offender," defined as follows:

15

> "Habitual felony offender" means a defendant for whom the court may impose an extended term of imprisonment, as provided in paragraph (4)(a), if it finds that:
>
> 1. The defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses.
>
> 2. The felony for which the defendant is to be sentenced was committed:
>
> …
>
> b. Within 5 years of the date of the conviction of the defendant's last prior felony or other qualified offense, or within 5 years of the defendant's release from a prison sentence, probation, community control, control release, conditional release, parole or court-ordered or lawfully imposed supervision or other sentence that is imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later.

*See* §§ 775.084(1)(a)1 & 2b, Fla. Stat.

Here, the state court found that Petitioner qualified for HFO status because he had been convicted of three prior felonies, including aggravated assault with a firearm, battery on law enforcement officer, and robbery (DE 7-1 at 86; DE 8-1 at 214, 216, 220). In addition, at the time of his offense, Petitioner had only recently been released from another term of state imprisonment on June 4, 2009 (DE 8-1 at 218).

Given these factors, the Court does not find this to be the type of "exceedingly rare" case that gives rise to an Eighth Amendment violation. *Cf. Harmelin*, 501 U.S. at 957 (upholding a life sentence for possession of 672 grams of cocaine); *Ewing v. California*, 538 U.S. 11 (2003) (upholding a sentence of twenty-five years to life for shoplifting three golf clubs after previous convictions of three burglaries and a robbery); *Hutto v. Davis*, 454 U.S. 370, 371-375 (1982) (rejecting Eighth Amendment challenge to a forty-year sentence imposed under Virginia law for possession of nine ounces marijuana). The Court also notes that Petitioner's sentence met, but

did not exceed, the maximum sentence allowed by section 775.084(4)(a)2, Florida Statutes. *Cf. Bembo v. Tucker*, No. 11-cv-132/MCR/EMT, 2012 WL 6213455, *9 (N.D. Fla. Oct. 29, 2012) ("A sentence that exceeds the statutory maximum has traditionally been viewed as a violation of the Eighth Amendment's protection against cruel and unusual punishment.") (cleaned up).

For these reasons, the Court finds that Petitioner has not satisfied his burden to show the state court's factual findings amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or that the state courts reached decisions that were "contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d). The Petition should be denied on the third claim.

## IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the Petition (DE 1) be **DENIED**. Further, the undersigned finds no substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (a prisoner seeking to appeal a district court's final order denying a § 2254 habeas corpus petition has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability by meeting the *Slack* test). Therefore, the undersigned respectfully **RECOMMENDS** that no certificate of appealability be issued.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions

contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1*; see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE and RECOMMENDED** in Chambers at West Palm Beach in the Southern District of Florida, this 12th day of September 2022.

　　　　　　　　　　　　　　　　　　　　　　　RYON M. MCCABE
　　　　　　　　　　　　　　　　　　　　　　　U.S. MAGISTRATE JUDGE